**CLARKSON LAW FIRM, P.C.**
Ryan J. Clarkson (SBN 257074)
*rclarkson@clarksonlawfirm.com*
633 Howard St.
San Francisco, CA 94105
Tel: (415) 651-7990

**CLARKSON LAW FIRM, P.C.**
Yana Hart (SBN 306499)
*yhart@clarksonlawfirm.com*
Bryan P. Thompson (SBN 354683)
*bthompson@clarksonlawfirm.com*
Cassandra Rasmussen (*PHV forthcoming*)
*crasmussen@clarksonlawfirm.com*
Jiaming Zheng (SBN 363184)
*jzheng@clarksonlawfirm.com*
22525 Pacific Coast Highway
Malibu, CA 90265
Tel: (213) 788-4050

*Counsel for Plaintiff and the Proposed Classes*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| EDWARD RICKMAN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>APPLE INC.,<br><br>Defendant. | Case No.: 5:26-cv-8218<br><br>**<u>CLASS ACTION COMPLAINT</u>**<br><br>1. VIOLATION OF UNFAIR COMPETITION LAW (CAL. BUS. & PROF. CODE §§ 17200, *ET SEQ.*)<br>2. VIOLATION OF FALSE ADVERTISING LAW (CAL. BUS. & PROF. CODE § 17500, *ET SEQ.*)<br>3. VIOLATION OF CONSUMERS LEGAL REMEDIES ACT (CAL. CIV. CODE §§ 1750, *ET SEQ.*)<br>4. FRAUD<br>5. NEGLIGENT MISREPRESENTATION<br>6. BREACH OF CONTRACT<br>7. QUASI-CONTRACT / UNJUST ENRICHMENT<br><br>**JURY TRIAL DEMAND** |

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

1. EDWARD RICKMAN, individually and on behalf of all others similarly situated, as more fully described below (the "Class" and "Class Members"), brings this class action complaint against Defendant Apple Inc. ("Defendant" or "Apple"), and alleges the following based upon information and belief, unless otherwise expressly stated as based upon personal knowledge.

## I. INTRODUCTION

2. For most of the last decade, the internet economy has run on a simple trade most consumers never agreed to: use a service for free, while the service extracts, aggregates, and monetizes everything it can learn from you in return. Technology companies like Facebook built their core models around the prediction and manipulation of human behavior through the ceaseless extraction of personal data.

3. A wave of criticism and lawsuits followed, accusing the largest technology companies of mass surveillance, violating users' privacy, and cheating competitors.

4. In 2019, the government put a number on the public outrage: a $5 billion settlement with Facebook for massive surveillance. The FTC and the New York Attorney General separately forced a $170 million settlement for Google and YouTube privacy violations. Regulators responded with new legislation proposals. In 2020, California's Consumer Privacy Act took effect, giving consumers an enforceable right to learn what companies collect about them and to demand that they stop. Several states began requiring the data broker industry to publicly register.

5. By 2021, Big Tech knew – privacy is a major concern for the American public and a material factor in their decision-making. The overwhelming majority of Americans believe companies should not collect or share data without clear, affirmative consent. Study after study confirms this. For example, 92% of Americans demand consent before data is sold or shared;[1] nearly 80% worry about how companies collect their information.[2]

---

[1] *Consumers Less Confident About Healthcare, Data Privacy, and Car Safety, New Survey Finds*, CONSUMER REPORTS (May 11, 2017), https://www.consumerreports.org/consumerreports/consumers-less-confident-about-healthcare-data-privacy-and-car-safety.

[2] *Americans and Privacy: Concerned, Confused, and Feeling Lack of Control Over Their Personal Information*, PEW RESEARCH CENTER (November 15, 2019), https://www.pewresearch.org/internet/2019/11/15/americans-and-privacy-concerned-confusedand-feeling-lack-of-control-over-their-personal-information.



Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

6. Apple was one of the first companies to capitalize on consumers' concerns and built one of the most valuable companies in the world in part on a single sentence: what happens on your device stays on your device. For over a decade, that promise has justified the price tag for every iPhone, every Mac, and every iCloud+ subscription Apple has ever sold.

7. In late 2020, Apple introduced its first iOS 14.5 with App Tracking Transparency, a privacy feature that required apps – including Facebook – to ask for explicit permission before tracking users' activity across other apps and websites. Facebook then launched full-page ads in major news outlets warning that Apple's move threatened 10 million businesses that rely on its advertising tools. But Apple's CEO Tim Cook defended the update, saying users "should have the choice over the data that is being collected about them and how it's used."

8. Apple user opt-outs then surged. Flurry Analytics reported 96% of the users from the U.S. selecting "ask app not to track," confirming what Apple had already known: Americans demand privacy.[3]

9. At the WWDC in 2021, capitalizing on consumers' intensified fear for privacy, Tommy Pauly, an Apple engineer, explained that despite various privacy settings, third-party companies can "fingerprint" user identity and recognize users across different websites, continuing massive data collection. Apple now had a solution for this problem: iCloud Private Relay, the architecture that made tracking impossible. Pauly explained that now the "opportunities for fingerprinting have been removed" because two independently operated relays split a user's identity from a user's destination so completely that "no one," "not even Apple," could ever reassemble them and see who you are and what you visit. "This is privacy by design," said Pauly.

10. The feature came with a price tag, available only to iCloud+ users, costing between $0.99 and $59.99 a month. And while users could opt into different cloud-based storage such as Google Drive, Dropbox, or other storage platforms, they chose iCloud+ to become invisible from Big Tech's massive surveillance.

---

[3] Ryan Daws, *Report: 96% of iOS 14.5 Users in the US Are Blocking Ad Tracking*, DEVELOPER (May 7, 2021), https://www.developer-tech.com/news/report-96-percent-american-ios-users-opt-out-ad-tracking/.

11. Apple users and the market were excited and responded accordingly about this release. Apple's services revenue nearly doubled from $50 billion in 2020 to $109.16 billion in 2025. iCloud+ dominates the Apple ecosystem with 70% of users paying for the service, making it the most widely adopted Apple subscription.[4]

12. By the end of 2021, Apple reinforced its promises, releasing its white paper regarding iCloud Private Relay capabilities, explaining how "Private Relay protects users' privacy on the internet."

13. In Summer of 2022, Tim Cook spoke at the IAPP Global Privacy Summit again reiterating the importance of privacy, Apple's "comprehensive security protections," and quoting late privacy scholar Alan Westin, "while the erosion of privacy was a legitimate fear, it was not an inevitable consequence of technology."[5] "What is collected, for what purposes, with whom information is shared, are all matters of policy choice, not technological determinism . . . Man cannot escape his social or moral responsibilities by murmuring feebly that the 'machine made me do it.'"[6]

14. Year after year, Apple continued to promise its subscribers Private Relay capabilities, reinforcing the notion that only on Safari, with the use of Private Relay tools, Apple users can be protected. Apple touts: "Hide your IP address and browsing activity in Safari and protect your unencrypted internet traffic—without affecting browsing performance."[7]

15. But in reality, Apple's promise that Private Relay's dual-relay design made it structurally impossible for any single party to see both a user identity and the destination of their traffic has never been true.

16. That is because Apple's *own* operating system using passkeys - the fingerprint-or-face login Apple has spent years pushing as a replacement for typed passwords—issues it directly from the device's credential service, never routing it through the relay that Apple built to prevent. This

---

[4] Rajesh Namase, *Apple Services Revenue Statistics 2026: Growth Trends and Profits*, TECHLILA, https://www.techlila.com/apple-services-revenue-statistics/ (last updated Apr. 13, 2026).
[5] *Apple's Tim Cook: Protecting privacy 'most essential battle of our time'*, IAPP (Apr. 12, 2022), https://iapp.org/news/a/apples-tim-cook-protecting-privacy-most-essential-battle-of-our-time.
[6] *Id.*
[7] *iCloud User Guide*, APPLE, https://support.apple.com/guide/icloud/icloud-overview-mmfc854d9604/icloud (last accessed Aug. 6, 2026).



Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

design has been in place since 2018 – long before Apple even introduced Private Relay. This happens automatically to anyone who used a passkey to log into a website – regardless of whether they had Private Relay turned on, and regardless of whether a passkey is saved for this specific website.

17. More recently, Apple's system updates created additional ways of releasing the IP information. In 2025, when Apple released iOS 26.0,[8] the updated features programmed the devices to look up the visiting website address using its normal, unprotected method instead of routing that lookup through Private Relay, revealing which internet service the device was actually using behind the scenes. Another update in iOS 26.4 called "WebTransport," implemented since March 2026, intended to provide a faster way of phone-website interaction, opens a direct HTTP/3 connection that bypasses the Private Relay's proxy architecture, exposing the device's IP address directly. [9]

18. Year after year, Plaintiff and Class Members paid subscription fees for iCloud+ in reliance on Apple's representations that Private Relay would hide their IP address and browsing activity in Safari. But instead, Apple delivered a system that recreates through its own credential service the precise harm Apple told the world it had made impossible. Because Private Relay did not work, subscribers received less than Apple promised and overpaid for their iCloud+ subscriptions.

19. Apple's representations that Private Relay hides a user's IP address and Safari browsing activity, together with Apple's failure to disclose the WebKit flaws described here, are referred to as the "Challenged Representations and Omissions."

20. This class action seeks to hold Apple responsible for marketing iCloud+ Private Relay as an IP-masking feature while the feature did not deliver the privacy benefit represented. Plaintiff seeks relief for economic overpayment tied to the iCloud+ subscription fees paid by subscribers during the relevant period.

---

[8] *Id.*

[9] Talal Haj Bakry & Tommy Mysk, *IP and DNS Leaks in WebKit Affecting Proxy Browsers and Apple iCloud Private Relay*, MYSK BLOG (Aug. 4, 2026), https://mysk.blog/2026/08/04/webkit-proxy-icloud-private-relay-ip-leak/#proxy-configuration-on-ios-and-macos.

## II. JURISDICTION

21. This Court has original jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because the proposed Class consists of 100 or more members; the amount in controversy exceeds $5,000,000, exclusive of costs and interest; and minimal diversity exists. This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

22. This Court has personal jurisdiction over Defendant because Defendant purposefully availed itself of this forum by conducting substantial business within California such that Defendant has significant, continuous, and pervasive contacts with the State of California.

## III. VENUE

23. Venue is proper in this District under 28 U.S.C. § 1391 because Defendant resides in this District, and a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

## IV. PARTIES

24. **Plaintiff Edward Rickman** is a citizen of California and has resided in Hanford, California, at all times relevant to this Complaint.

25. While physically present in the State of California, Plaintiff purchased an iCloud+ subscription directly from Apple after relying on Apple's marketing and believing that iCloud+, through its iCloud Private Relay feature, would hide Plaintiff's IP address and browsing activity in Safari and prevent websites from seeing Plaintiff's real IP address.

26. In deciding to subscribe, Plaintiff viewed and relied on Apple's advertising and marketing, including the Challenged Representations and Omissions, leading Plaintiff to believe that iCloud+, through iCloud Private Relay, was designed to and would conceal Plaintiff's IP address and browsing activity in Safari. Plaintiff relied heavily on this when deciding to subscribe to iCloud+.

27. At the time of subscribing, Plaintiff did not know the Challenged Representations and Omissions were false and deceptive—i.e., that iCloud Private Relay did not and would not reliably conceal Plaintiff's real IP address as represented.



Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

28. At the time of purchase, Plaintiff did not notice any disclaimer, qualifier, or other explanatory statement or information in Apple's advertising and marketing that contradicted the prominent Challenged Representations and Omissions or otherwise suggested that iCloud Private Relay would not provide the advertised IP-masking protection. Plaintiff is not aware of any representations from Apple disclaiming or qualifying Apple's representations regarding masking Private Relay and masking IP addresses when browsing.

29. Plaintiff would not have subscribed to iCloud+, or would not have paid as much for the subscription, had Apple not made the false and misleading Challenged Representations and Omissions and/or had Plaintiff otherwise known that the Challenged Representations and Omissions were not true—i.e., that iCloud Private Relay did not provide the advertised IP-masking protection.

30. Plaintiff cares deeply about privacy and would not have subscribed to or used iCloud+ in the manner that Plaintiff did if Plaintiff had known that websites could obtain Plaintiff's real IP address despite iCloud Private Relay being enabled.

31. Plaintiff desires to subscribe to Apple's iCloud+ service again if the Challenged Representations and Omissions were true—i.e., if iCloud Private Relay actually concealed Plaintiff's IP address, as advertised.

32. In the future, Plaintiff will therefore be unable to determine the truth and accuracy of the Challenged Representations and Omissions, including whether iCloud Private Relay in fact conceals Plaintiff's real IP address as advertised.

33. Additionally, Plaintiff would not have used iCloud+ and Safari as Plaintiff did if Plaintiff had known that third-party websites could obtain Plaintiff's real IP address notwithstanding the represented protections of iCloud Private Relay.

34. Plaintiff is, and continues to be, unable to rely on the truth of the Challenged Representations and Omissions in Apple's advertising and marketing.

35. Apple continues to market and sell iCloud+ and its iCloud Private Relay feature and has not taken appropriate action to make clear the falsity or misleading nature of the Challenged Representations and Omissions. Accordingly, Plaintiff is at risk of reasonably, but incorrectly, assuming that Apple has fixed iCloud Private Relay to perform as advertised and that the feature is

accurately described.

36. Contrary to the Challenged Representations and Omissions, when iCloud Private Relay was enabled, websites were able to obtain Plaintiff's real IP address through flaws in Apple's WebKit browser engine, defeating the IP-masking protection for which Plaintiff had paid.

37. As a direct and proximate result of the Challenged Representations and Omissions, Plaintiff has suffered ascertainable monetary losses, including but not limited to overpayment for the iCloud+ subscription.

38. **Defendant Apple Inc.** is an active California corporation with its principal place of business located at One Apple Park Way, Cupertino, California 95014. Apple regularly conducts business throughout California and in this judicial district.

39. At all relevant times, Defendant was conducting business in the state of California, including the Class Period. Defendant is one of the owners, manufacturers, marketers, and distributors of the Subscriptions, and is the company that created, authorized, and controlled the use of the Challenged Representations to market the Subscriptions. Defendant and its agents promoted, marketed, and sold the Subscriptions at issue throughout the United States and, in particular, within this judicial district. The unfair, unlawful, deceptive, and misleading Challenged Representations on the Subscriptions were prepared, authorized, ratified, and/or approved by Defendant and its agents, and were disseminated throughout California and the nation by Defendant and its agents to deceive and mislead consumers in the State of California and throughout the United States into purchasing the Subscriptions.

## V. FACTUAL ALLEGATIONS

### A. Privacy and IP Masking Are Increasingly in Demand by Consumers

40. Consumers care deeply about the privacy of their personal information and increasingly expect the companies whose services they buy to protect their privacy. In a nationally representative survey, roughly 79% of U.S. adults reported being concerned about how companies use the data collected about them, and 81% said the potential risks of corporate data collection



Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

outweigh the benefits.[10] A large majority also reported feeling they have little or no control over how companies use their personal information, and about 72% felt that most of what they do online is being tracked by advertisers and technology firms.[11]

41. Consumers' privacy concerns specifically extend to their IP addresses, and many have turned to tools and services that block their IP addresses. In fact, more than three-quarters of consumers (77.1%) have used **at least one privacy tool**, according to a May 2024 EMARKETER survey.[12] And roughly 68% of American adults use VPNs, which mask a user's true IP address.[13] This consumer demand has translated into a rapidly growing market: the global virtual private network market was valued at $69.82 billion in 2025 and is projected to grow to $336.67 billion by 2034, with North America holding roughly 36% of that market.[14]

42. Companies have responded to this demand by building and marketing IP-masking features to consumers. For example, Google has developed an "IP Protection" feature for Chrome's Incognito mode, which is designed to limit the availability of a user's original IP address in third-party contexts specifically to prevent cross-site tracking.[15]

---

[10] *Americans and Privacy: Concerned, Confused and Feeling Lack of Control Over Their Personal Information*, PEW RESEARCH CENTER, (Nov. 15, 2019), https://www.pewresearch.org/internet/2019/11/15/americans-and-privacy-concerned-confused-and-feeling-lack-of-control-over-their-personal-information/.

[11] *Id.*

[12] Emmy Liederman, *Consumers Lean on VPNs to Pursue Online Privacy*, EMARKETER (Apr. 24, 2025), https://www.emarketer.com/content/consumers-lean-on-vpns-pursue-online-privacy (emphasis added).

[13] Susie Stulz, *IP Address Targeting: Privacy Myth or Marketing Must?*, ADMONSTERS (Jan. 22, 2025), https://www.admonsters.com/ip-address-targeting-privacy-myth-or-marketing-must/ (citation omitted).

[14] *Virtual Private Network Market Size, Share and Global Trend By Type(Remote Access VPN, Site-to-Site VPN), By End User (Government, Telecommunication, Manufacturing, Healthcare, BFSI, Utilities, Others), By Deployment (On Premise, On Cloud) , By Application(Consumer, Commercial, Service provider), and Regional Forecast, 2026-2034*, FORTUNE BUSINESS INSIGHTS, https://www.fortunebusinessinsights.com/industry-reports/virtual-private-network-market-100637 (last updated July 20, 2026).

[15] Ravie Lakshmanan, *Google Drops Cookie Prompt in Chrome, Adds IP Protection to Incognito*, THE HACKER NEWS (Apr. 23, 2025), https://thehackernews.com/2025/04/google-drops-cookie-prompt-in-chrome.html.

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

43. Because privacy and IP masking have become increasingly important to consumers' purchasing decisions, companies increasingly market privacy protection as a feature and use it to differentiate their services and to command consumer loyalty, and in many cases, higher prices.

### B. Apple Built Its Brand on Privacy

44. Apple has spent more than a decade positioning privacy as the central difference between its products and those of its competitors. On its privacy webpage, under the banner "Privacy. That's Apple.," Apple tells consumers that "[p]rivacy is a fundamental human right," that it is "also one of our core values," and that this is "why we design our products and services to protect it."[16]

45. Such positioning is commercially deliberate. Apple competes in a mature market in which hardware specifications are increasingly difficult to differentiate. Privacy is the differentiator Apple chose, and Apple has invested heavily in persuading consumers that choosing Apple means choosing protection from tracking, profiling, and surveillance.

46. Consumers understood and relied on that message. Apple's privacy claims are not incidental marketing; they are a principal reason many consumers buy Apple devices, remain within the Apple ecosystem, and pay for Apple's subscription services. When Apple represents that a paid feature protects a consumer's privacy, consumers reasonably take Apple at its word.

### C. Apple Launched and Monetized iCloud+ Private Relay as a Premium Privacy Feature Reiterating that "No One – Not Even Apple" Could See Users' IP Addresses

47. Apple unveiled iCloud+ Private Relay at its annual Worldwide Developers Conference in June 2021 and released it with iOS 15 later that year.[17] WWDC is among the most highly anticipated and widely publicized technology events in the United States each year. Consumers, investors, and media outlets tune in virtually or otherwise follow the conference closely, and Apple's announcements are amplified across primetime television, cable news, national and

---

[16] *Privacy*, APPLE, https://www.apple.com/privacy/ (last accessed Aug. 6, 2026).

[17] *Apple Advances Its Privacy Leadership with iOS 15, iPadOS 15, macOS Monterey, and watchOS 8,* NEWSROOM (June 7, 2021), https://www.apple.com/newsroom/2021/06/apple-advances-its-privacy-leadership-with-ios-15-ipados-15-macos-monterey-and-watchos-8/.

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

local newspapers, radio, podcasts, and online media.[18] During the presentation at WWDC, Apple announced that its new Private Relay feature "ensures that the traffic leaving your device is encrypted so **that no one can intercept and read it**" and that "[i]t's designed so that no one, including Apple, can see both who you are and what sites you're visiting."[19] "It is critical to note that no one in this chain, not even Apple, can see the client IP address . . ." Private Relay is not a free feature, but instead offered only as a component of iCloud+, the paid tier of Apple's iCloud service. To obtain the protection Apple described, a consumer must subscribe to a paid iCloud+ plan.[20]




[18] *See* Michael Grothaus, How to Watch Apple's WWDC 26 Event and Keynote Today in Time Zones Around the World, Fast Company (June 8, 2026), https://www.fastcompany.com/91555398/apple-wwdc-2026-live-stream-today-time-zones-keynotes-how-to-watch.

[19] *WWDC21*, APPLE, at 55:36–55:43 https://developer.apple.com/videos/play/wwdc2021/101/ (last visited Aug. 6, 2026) (emphasis added).

[20] *See About iCloud Private Relay*, APPLE (Aug. 31, 2023), https://support.apple.com/en-us/102602.









Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

48. Apple then amplified its messaging about Private Relay capabilities across national news, cable, podcasts, and social media, within hours of the WWDC. Since the WWDC21 presentation and the public release of iCloud+ and Private Relay, Apple has been constantly touting and bombarding consumers with unrealistic promises, in an attempt to induce consumers to subscribe to its iCloud+. Apple built its marketing for iCloud+ focusing heavily on Private Relay: making representations on the landing page of iCloud, publishing white papers, press releases, dedicating a unique page on its website, and reiterating the messaging surrounding Private Relay across all of its marketing platforms. Even inside the users' devices before users purchase the iCloud+, they see Apple's core messaging about Private Relay, and its ability to mask users' IP addresses. Before a consumer is able to sign in their account, they are exposed to advertisements of iCloud+ with a promise of "peace of mind with privacy features like iCloud Private Relay."[21]

49. By December 2021, Apple released its white paper, discussing in detail how iCloud Private Relay "protects users' privacy on the internet," reiterating the concept that no one can see the user's IP addresses.[22]



**Designed for Privacy**

Private Relay is built on the principle that IP addresses that identify users need to be separated from the names of websites that users access. To achieve this separation, Apple has engineered an innovative dual-hop architecture in which users' requests are sent through two separate internet relays operated by different entities. Private Relay's dual-hop architecture protects the privacy of users by separating who can observe their IP addresses from who can see the websites they visit.

**Private Relay Dual-hop Architecture**



When Private Relay is in use, the user's device opens up a connection to the first internet relay (also known as the "ingress proxy"). The software for the first internet relay is operated by Apple in locations around the world.

---

[21] *iCloud*, APPLE, https://www.icloud.com/ (last visited Aug. 6, 2026).

[22] *iCloud Private Relay Overview*, APPLE (2021), https://www.apple.com/icloud/docs/iCloud_Private_Relay_Overview_Dec2021.pdf.



Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

50. Apple explained precisely why Private Relay mattered, in its own words. On its support page Apple told users that without Private Relay "DNS records and IP addresses [] can be seen by your network and the websites you visit[]", and that this data "could be used to determine your identity and build a profile of your location and browsing history over time." To differentiate itself from its competitors, Apple told subscribers what they would be paying for: "iCloud Private Relay is designed to protect your privacy by ensuring that when you browse the web in Safari, no single party—not even Apple—can see both who you are and what sites you're visiting."[23]

# About iCloud Private Relay

iCloud Private Relay — part of an iCloud+ subscription — helps protect your privacy when you browse the web in Safari.

## How Private Relay works

Normally when you browse the web, information contained in your web traffic, such as your DNS records and IP address, can be seen by your network provider and the websites you visit. This information could be used to determine your identity and build a profile of your location and browsing history over time.

iCloud Private Relay is designed to protect your privacy by ensuring that when you browse the web in Safari, no single party — not even Apple — can see both who you are and what sites you're visiting.

When Private Relay is enabled, your requests are sent through two separate, secure internet relays.

- Your IP address is visible to your network provider and to the first relay, which is operated by Apple. Your DNS records are encrypted, so neither party can see the address of the website you're trying to visit.
- The second relay, which is operated by a third-party content provider, generates a temporary IP address, decrypts the name of the website you requested, and connects you to the site.



All of this is done using the latest internet standards to maintain a high-performance browsing experience

[23] *Supra* note 20.

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

51. Apple dedicated another page to iCloud+, where it further touts its Private Relay capabilities that can "prevent websites and network providers from building a profile about you based on your **IP address, location**, and browsing history" and that "[j]ust turn it on and you're instantly protected."[24] In fact, iCloud Private Relay is placed on the left-hand side of the webpage under the heading in bold, presented in a manner to ensure that a consumer notices such claim first.[25]




[24] *iCloud+*, APPLE, https://www.apple.com/icloud/ (last visited Aug. 6, 2026) (emphasis added).
[25] *Id.*

52. Apple reinforces its marketing for the Private Relay feature consistently through every single pricing plan as the second feature right after the storage space information.[26]

## iCloud+ plans and pricing

iCloud keeps your information safe, automatically backed up, and available anywhere you go — with 5 GB of storage for free. When you upgrade to iCloud+, you get even more storage along with enhanced privacy features that protect you and your data.

### About iCloud+

iCloud+ is Apple's premium cloud subscription. It gives you more storage for your photos, files, and backups, and additional features* available only to subscribers.

#### iCloud+ with 50 GB storage

- 50 GB of storage
- iCloud Private Relay
- Hide My Email
- Custom Email Domain
- HomeKit Secure Video support for one camera

Share everything with up to five other family members.

#### iCloud+ with 200 GB storage

- 200 GB of storage
- iCloud Private Relay
- Hide My Email
- Custom Email Domain
- HomeKit Secure Video support for up to five cameras

Share everything with up to five other family members.

#### iCloud+ with 2 TB, 6 TB, or 12 TB storage

- 2 TB, 6 TB, or 12 TB of storage
- iCloud Private Relay
- Hide My Email
- Custom Email Domain
- HomeKit Secure Video support for an unlimited number of cameras

Share everything with up to five other family members.

53. Apple's Challenged Representations and Omissions were material because reasonable subscribers would consider it important that a paid privacy feature advertised to hide IP address and Safari browsing activity actually do so. The promised IP-masking functionality was a substantial part of the value Apple sold through the recurring subscription.

**D. <u>WebKit Flaws Expose Real IP Addresses Despite Private Relay</u>**

54. Despite Apple's claims, Private Relay did not consistently hide users' IP addresses as Apple represented. There were three primary flaws in Apple's WebKit which is used in the Safari browser, and which allowed websites to see the user's real IP address even when Private Relay was turned on.

---

[26] *iCloud+ Plans and Pricing*, APPLE (July 17, 2026), https://support.apple.com/en-us/108047.

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

55. On August 4, 2026, security researchers Talal Haj Bakry and Tommy Mysk published research disclosing that three separate features in Apple's WebKit engine allow users' IP addresses to be leaked, even when Private Relay is enabled: (1) DNS Prefetching, (2) WebAuthn Related Origin Requests, and (3) WebTransport.[27] It does this by bypassing a configured proxy to send traffic directly from the device, and that these leaks also defeat Apple's iCloud Private Relay.[28]

56. The researchers stated their central finding in plain terms: "In short: any website that supports, or pretends to support, passkeys can see the user's real IP address despite having iCloud Private Relay on."[29] The researchers published a public test page permitting any user to determine whether their own device leaks their IP address, and identified the specific WebKit features responsible together with the iOS versions in which each became available.[30] This is when many Apple users have discovered for the first time that their IP addresses have never been masked, and the Private Relay feature they've been paying for never delivered what Apple promised.

57. Consumers throughout the Internet echo the findings of this research and express their dissatisfactions and frustrations with Apple's Private Relay. As one consumer put it bluntly after learning that his IP addresses had been exposed this entire time while he believed it to be protected, "Don't trust corporate when it comes to your privacy. The champion of privacy is just an empty brand."[31]

58. As a result, Private Relay did not perform as Apple represented, and iCloud+ subscribers who used Private Relay did not receive the IP-masking privacy protection promised.

---

[27] Bakry & Mysk, *supra* note 9.

[28] *Id.*

[29] *Apple's 'Private Relay' Is Exposing Users' Real IP Addresses*, 404 MEDIA (Aug. 5, 2026), https://www.404media.co/apples-private-relay-is-exposing-users-real-ip-addresses/ (last accessed Aug. 6, 2026).

[30] Bakry & Mysk, *supra* note 9; *Browser IP & DNS Leak Checker*, PSYLO, https://leaks.psylo.app/ (last accessed Aug. 6, 2026).

[31] *Apple's 'Private Relay' Is Exposing Users' Real IP Addresses*, REDDIT (R/PRIVACY), https://www.reddit.com/r/privacy/comments/1vgg7wn/apples_private_relay_is_exposing_users_real_ip/?solution=0a37bdafb2decb100a37bdafb2decb10&js_challenge=1&token=7afd7253fec22262ff1c52b1703fe9ecfa49280230583c6ab8bf48a697e6a3da&jsc_orig_r= (last accessed Aug. 6, 2026).

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

### E. **Plaintiff and Reasonable Consumers Were Misled into Paying for iCloud+ to Their Detriment**

59. The Challenged Representations and Omissions lead reasonable consumers, like Plaintiff, into believing that Private Relay hides the user's IP address and browsing activity in Safari when enabled.

60. The Challenged Representations and Omissions are material to reasonable consumers, including Plaintiff, in deciding whether to purchase, renew, or continue paying for iCloud+. Private Relay is touted by Apple itself as one of the primary features of iCloud+ and the IP-masking privacy promise is a material component of the subscription's advertised value.

61. The Class, including Plaintiff, reasonably relied on the Challenged Representations and Omissions in deciding to purchase, renew, or continue paying for iCloud+.

62. The Challenged Representations and Omissions are deceptive because WebKit flaws allowed websites to see the user's real IP address even when Private Relay was enabled.

63. The Class who purchased the Subscriptions, including Plaintiff, did not know and had no reason to know, at the time of purchase, that the Subscriptions' Challenged Representations were false, misleading, deceptive, and unlawful.

64. Defendant knew, or should have known, that the Challenged Representations were false, misleading, deceptive, and unlawful, at the time that Defendant manufactured, marketed, advertised, labeled, and sold the Subscriptions using the Challenged Representations to Plaintiff and the Class. Defendant intentionally and deliberately used the Challenged Representations, alongside the Subscriptions' design/purpose to cause Plaintiff and similarly situated consumers to buy the Subscriptions believing that the Challenged Representations are true.

a. Defendant knew or should have known that its representations regarding the IP-masking capabilities of iCloud Private Relay would lead consumers to believe that iCloud+ would conceal their real IP address and browsing activity in Safari, and would induce consumers to subscribe to iCloud+.

b. Defendant advertised iCloud Private Relay's IP-masking capabilities knowing, or having reason to know, that iCloud Private Relay did not reliably

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

provide the IP-masking protection it was advertising.

c. Defendant knew or should have known of the Challenged Representations' materiality to consumers. Apple advertised iCloud Private Relay as a way to enhance sales of its iCloud+ subscriptions and other similar services, knowing that consumers highly prized privacy and IP-address concealment. Apple made the false and misleading representations with the knowledge that iCloud Private Relay did not have the IP-masking capabilities Apple claimed, in order to artificially inflate demand, and the price, for iCloud+.

d. Defendant, as the developer and marketer of iCloud+ and iCloud Private Relay, had exclusive control over the Challenged Representations—i.e., Defendant readily and easily could have stopped using the Challenged Representations to sell iCloud+. However, despite Defendant's knowledge of the Challenged Representations' falsity, and Defendant's knowledge that consumers reasonably rely on the representations in deciding to subscribe to iCloud+, Defendant deliberately chose to market, and continue marketing, iCloud+ with the Challenged Representations, thereby misleading consumers into subscribing to or overpaying for iCloud+. Thus, Defendant knew, or should have known, at all relevant times, that the Challenged Representations would mislead reasonable consumers, such as Plaintiff, into subscribing to iCloud+ to attain the attributes that Defendant falsely advertised.

65. Plaintiff and similarly situated consumers would not have purchased, renewed, or continued paying the same amount for iCloud+ if they had known that Private Relay did not hide their IP address and Safari browsing activity as represented. Accordingly, based on Defendant's Challenged Representations and Omissions, reasonable consumers, including Plaintiff, paid subscription fees for iCloud+ to their detriment and suffered economic overpayment injury.

### F. <u>No Adequate Remedy at Law</u>

66. Plaintiff and the Class are entitled to equitable relief as no adequate remedy at law exists.

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

67. The statutes of limitations for the causes of action pled in this Complaint vary. The limitations period is four years for claims brought under the UCL, which is one year longer than the statutes of limitations under the FAL and CLRA. In addition, the statutes of limitations vary for certain states' laws for unjust enrichment/restitution, between approximately two and six years.

68. In addition, the scope of actionable misconduct under the unfair prong of the UCL is broader than the other causes of action asserted here. It includes, for example, Defendant's overall unfair marketing scheme to promote and brand the Subscriptions with the Challenged Representations, across a multitude of media platforms, over a long period of time, in order to gain an unfair advantage over competitor services and to take advantage of consumers' desire for services that comport with the Challenged Representations. The UCL also creates a cause of action for violations of law (such as statutory or regulatory requirements and court orders related to similar representations made on the type of services at issue). Thus, Plaintiff and Class Members may be entitled to restitution under the UCL, while not entitled to damages under other causes of action asserted here. Similarly, unjust enrichment/restitution is broader than some other claims for damages. For example, in some states, some state-specific claims may require privity of contract or pre-lawsuit notice, which are not typically required to establish unjust enrichment/restitution. Thus, Plaintiff and Class Members may be entitled to recover under unjust enrichment/restitution, while not entitled to damages under other claims, because they purchased the Subscriptions from third-party retailers or did not provide adequate notice of a breach prior to the commencement of this action.

69. Injunctive relief is appropriate on behalf of Plaintiff and the Class because Defendant continues to misrepresent the Subscriptions with the Challenged Representations. Injunctive relief is necessary to prevent Defendant from continuing to engage in the unfair, fraudulent, and/or unlawful conduct described here and to prevent future harm—none of which can be achieved through available legal remedies (such as monetary damages to compensate past harm). Further, injunctive relief, in the form of a corrective advertising campaign and affirmative disclosures, is necessary to dispel the public misperception about the Subscriptions that has resulted from Defendant's unfair, fraudulent, and unlawful marketing efforts. Such disclosures would include, but

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

are not limited to, publicly disseminated statements providing accurate information about the Subscription's true nature and an advertising campaign focused on correcting the prior false and misleading statements. An injunction requiring affirmative disclosures, as well as corrective advertising, to dispel the public's misperception and prevent the ongoing deception, is also not available through a legal remedy (such as monetary damages). In addition, Plaintiff is *currently* unable to accurately quantify the damages caused by Defendant's future harm, because discovery and Plaintiff's investigation have not yet completed, rendering injunctive relief all the more necessary. For example, because the court has not yet certified any class, the following remains unknown: the scope of the class, the identities of its members, their respective purchasing practices, prices of past/future Subscriptions, and quantities of past/future sales of Subscriptions.

70. Further, because a "public injunction" is available under the UCL, damages will not adequately "benefit the general public" in a manner equivalent to an injunction.

71. The California Subclass Members assert additional claims based on California state law in addition to that asserted by the Nationwide Class. Dismissal of farther-reaching claims, such as restitution, would bar recovery for non-California members of the Class. In other words, legal remedies available or adequate under the California-specific causes of action have no impact on this Court's jurisdiction to award equitable relief under the remaining causes of action asserted on behalf of non-California putative class members.

72. Lastly, this is an initial pleading in this action, and discovery has not yet commenced. No class has been certified yet. No expert discovery has commenced. The completion of fact/non-expert and expert discovery, as well as the certification of this case as a class action, are necessary to finalize and determine the adequacy and availability of all remedies, including legal and equitable, for Plaintiff's individual claims and any certified class or subclass. Plaintiff therefore reserves Plaintiff's right to amend this complaint and/or assert additional facts that demonstrate this Court's jurisdiction to order equitable remedies where no adequate legal remedies are available for either Plaintiff and/or any certified class or subclass. Such proof, to the extent necessary, will be presented prior to the trial of any equitable claims for relief and/or the entry of an order granting equitable relief.

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

## VI. TOLLING OF STATUTE OF LIMITATIONS

### A. Discovery Rule

73. Apple's knowing and active concealment and denial of the facts alleged here toll any applicable statute(s) of limitations. Plaintiff and Class Members could not reasonably have discovered the true nature and extent of the failure of iCloud Private Relay to conceal users' real IP addresses until the facts alleged heree became known.

74. Plaintiff and Class Members had no reasonable ability to discover, within the applicable statute of limitations, that Apple was misrepresenting the IP-masking protection of iCloud Private Relay, and could not have discovered through the exercise of reasonable diligence that iCloud Private Relay failed to conceal their real IP addresses, or that Apple was misrepresenting the features, capabilities, reliability, functionality, characteristics, and performance of iCloud Private Relay.

75. Any statutes of limitation otherwise applicable to any claims asserted herein thus have been tolled by the discovery rule.

### B. Fraudulent Concealment

76. All applicable statutes of limitations have also been tolled by Apple's knowing, active, and ongoing fraudulent concealment of the material facts alleged herein.

77. Apple had a duty to disclose, among other things, that iCloud Private Relay did not reliably conceal users' real IP addresses as represented, because that protection is central to the privacy and functionality of the feature and was the subject of Apple's own affirmative marketing representations.

78. Despite its knowledge, Apple actively concealed these material facts from Plaintiff and Class Members while continuing to profit from iCloud+ subscriptions marketed on the representation that iCloud Private Relay would hide users' IP addresses and browsing activity in Safari.

79. As a result of Apple's active concealment, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled.

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

### C. Estoppel

80. Apple had a duty to disclose to Plaintiff and Class Members the true character, nature, and quality of iCloud Private Relay, including the facts that flaws in Apple's WebKit browser engine allowed websites to obtain users' real IP addresses notwithstanding iCloud Private Relay, and that the IP-masking protection Apple marketed did not perform as represented.

81. Instead, Apple concealed the true character, nature, and quality of iCloud Private Relay and knowingly made misrepresentations about the IP-masking protection, reliability, functionality, characteristics, and performance of iCloud Private Relay.

## VII. CLASS ACTION ALLEGATIONS

82. **Class Definition.** Plaintiff brings this action as a class action on behalf of himself and all others similarly situated as members of the Class defined as follows:

**Nationwide Class**

> All residents of the United States who, within the applicable statute of limitations periods, paid for iCloud+, enabled or used iCloud+ Private Relay, and did so for purposes other than resale ("Nationwide Class"); and

**California Subclass**

> All residents of California who, within four years prior to the filing of this action, paid for iCloud+, enabled or used iCloud+ Private Relay, and did so for purposes other than resale ("California Subclass").

83. Collectively, the Nationwide Class and California Subclass are referred to as the "Classes" or "the Class".

84. **Class Definition Exclusions.** Excluded from the Class are: (i) Defendant, its assigns, successors, and legal representatives; (ii) any entities in which Defendant has controlling interests; (iii) federal, state, and/or local governments, including, but not limited to, their departments, agencies, divisions, bureaus, boards, sections, groups, counsels, and/or subdivisions; and (iv) any judicial officer presiding over this matter and person within the third degree of consanguinity to such judicial officer.

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

85. **Reservation of Rights to Amend the Class Definition.** Plaintiff reserves the right to amend or otherwise alter the class definition presented to the Court at the appropriate time in response to facts learned through discovery, legal arguments advanced by Defendant, or otherwise.

86. **Numerosity.** Members of the Class are so numerous that joinder of all members is impracticable. The Nationwide Class consists of millions of purchasers dispersed throughout the United States, and the California Subclass likewise consists of at least thousands of purchasers (if not more) dispersed throughout the State of California. Accordingly, it would be impracticable to join all members of the Class before the Court.

87. **Common Questions Predominate.** There are numerous and substantial questions of law or fact common to all members of the Class that predominate over any individual issues. Included within the common questions of law or fact are:

a. Whether Apple engaged in unlawful, unfair or deceptive business practices when advertising and selling iCloud+ Private Relay;

b. Whether Apple's conduct of advertising and selling iCloud+ Private Relay was false or deceptive;

c. Whether Apple's conduct constitutes an unfair method of competition, or unfair or deceptive act or practice, in violation of Civil Code section 1750, *et seq*.;

d. Whether Apple used deceptive representations in connection with the sale of the Subscriptions in violation of Civil Code section 1750, *et seq*.;

e. Whether Apple represented that the Subscriptions have characteristics or quantities that they do not have in violation of Civil Code section 1750, *et seq*.;

f. Whether Apple advertised the Subscriptions with intent not to sell them as advertised in violation of Civil Code section 1750, *et seq*.;

g. Whether Apple's advertising and marketing of the Subscriptions are misleading in violation of Business and Professions Code section 17500, *et seq*.;

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

h. Whether Apple knew or by the exercise of reasonable care should have known its advertising and marketing were and are misleading in violation of Business and Professions Code section 17500, *et seq*.;

i. Whether Apple's conduct is an unfair business practice within the meaning of Business and Professions Code section 17200, *et seq*.;

j. Whether Apple's conduct is a fraudulent business practice within the meaning of Business and Professions Code section 17200, *et seq*.;

k. Whether Apple's conduct is an unlawful business practice within the meaning of Business and Professions Code section 17200, *et seq*.;

l. Whether Plaintiff and the Class paid more money for iCloud+ than the subscription was worth as represented;

m. How much more money Plaintiff and the Class paid for iCloud+ than they actually received;

n. Whether Plaintiff and the Class are entitled to injunctive relief; and

o. Whether Apple was unjustly enriched by its unlawful conduct.

88. **Predominance**. The common questions of law and fact predominate over questions that affect only individual Class Members.

89. **Typicality.** Plaintiff's claims are typical of the claims of the Class Members Plaintiff seeks to represent because Plaintiff, like the Class Members, purchased Defendant's misleading and deceptive Subscriptions. Defendant's unlawful, unfair and/or fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced. Plaintiff and the Class sustained similar injuries arising out of Defendant's conduct. Plaintiff's and Class Members' claims arise from the same practices and course of conduct and are based on the same legal theories.

90. **Adequacy.** Plaintiff is an adequate representative of the Class he seeks to represent because Plaintiff's interests do not conflict with the interests of the Class Members. Plaintiff will fairly and adequately protect Class Members' interests and has retained counsel experienced and

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

competent in the prosecution of complex class actions, including complex questions that arise in consumer protection litigation.

91. **Ascertainability.** Class Members can easily be identified by an examination and analysis of the business records regularly maintained by Defendant, including subscription records showing iCloud+ payments and records concerning Private Relay enablement or use that are within Apple's possession, custody, or control.

92. **Superiority and Substantial Benefit.** A class action is superior to other methods for the fair and efficient adjudication of this controversy, since individual joinder of all members of the Class is impracticable and no other group method of adjudication of all claims asserted herein is more efficient and manageable for at least the following reasons:

a. The claims presented in this case predominate over any questions of law or fact, if any exist at all, affecting any individual member of the Class;

b. Absent a Class, the members of the Class will continue to suffer damage and Defendant's unlawful conduct will continue without remedy while Defendant profits from and enjoys its ill-gotten gains;

c. Given the size of individual Class Members' claims, few, if any, Class Members could afford to or would seek legal redress individually for the wrongs Defendant committed against them, and absent Class Members have no substantial interest in individually controlling the prosecution of individual actions;

d. When the liability of Defendant has been adjudicated, claims of all members of the Class can be administered efficiently and/or determined uniformly by the Court; and

e. This action presents no difficulty that would impede its management by the Court as a class action, which is the best available means by which Plaintiff and Class Members can seek redress for the harm caused to them by Defendant.

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

93. **Inconsistent Rulings.** Because Plaintiff seeks relief for all members of the Class, the prosecution of separate actions by individual members would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for Defendant.

94. **Injunctive/Declaratory Relief.** The prerequisites to maintaining a class action for injunctive or equitable relief are met as Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or declaratory relief with respect to the Class as a whole.

95. **Manageability.** Plaintiff and Plaintiff's counsel are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

## VIII. CAUSES OF ACTION

### COUNT ONE

**Violation of California Unfair Competition Law**

**(Cal. Bus. & Prof. Code §§ 17200, *et seq*.)**

**(*On Behalf of The Nationwide Class, Or, In The Alternative, The California Subclass*)**

96. Plaintiff restates and realleges the preceding factual allegations set forth above as if fully alleged herein.

97. Plaintiff brings this claim on behalf of himself and on behalf of the Nationwide Class, or alternatively, the California Subclass.

98. This claim is brought under California law or, alternatively, the laws of the respective states where Class Members purchased the Subscriptions.

99. This cause of action is brought pursuant to Business and Professions Code Section 17200, *et seq*., on behalf of those who paid for iCloud+, enabled or used iCloud Private Relay, and did so within the applicable statute of limitations.

100. California Business & Professions Code, sections 17200, *et seq.* (the "UCL") prohibits unfair competition and provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

advertising."

101. Defendant, in its advertising and marketing of iCloud+ and Private Relay, made misleading statements regarding the quality and characteristics of Private Relay—specifically, the Challenged Representations and Omissions regarding hiding a user's IP address and browsing activity in Safari. Instead, WebKit flaws allowed websites to see a user's real IP address even when Private Relay was turned on. Such claims were made by Defendant in marketing its paid iCloud+ subscription.

102. Defendant lacked a reasonable basis for representing that iCloud Private Relay would hide users' IP addresses and browsing activity in Safari because WebKit flaws allowed websites to see users' real IP addresses even when Private Relay was enabled. Defendant marketed iCloud+ and Private Relay in a manner that led reasonable consumers to believe that Private Relay would provide the advertised IP-masking privacy protection.

103. Defendant's advertising and marketing of iCloud+ and Private Relay led, and continues to lead, reasonable consumers, including Plaintiff, to believe that Private Relay hides a user's IP address and browsing activity in Safari as represented, and thereby induced consumers to purchase, renew, or continue paying for iCloud+.

104. Plaintiff and the Class Members have suffered injury in fact and have lost money or property as a result of and in reliance upon the Challenged Representations and Omissions—namely, Plaintiff and the Class Members overpaid subscription fees for iCloud+ because Private Relay did not provide the IP-masking functionality Apple represented.

105. Defendant's conduct, as alleged herein, constitutes unfair, unlawful, and fraudulent business practices pursuant to the UCL. The UCL prohibits unfair competition and provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. In addition, Defendant's use of various forms of advertising media to advertise, call attention to, or give publicity to the sale of goods or merchandise that are not as represented in any manner constitutes unfair competition, unfair, deceptive, untrue or misleading advertising, and an unlawful business practice within the meaning of Business and Professions Code Sections 17200

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

and 17531, which advertisements have deceived and are likely to deceive the consuming public, in violation of Business and Professions Code Section 17200.

106. Defendant failed to avail itself of reasonably available, lawful alternatives to further its legitimate business interests.

107. All of the conduct alleged here occurred and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern, practice and/or generalized course of conduct, which will continue on a daily basis until Defendant voluntarily alters its conduct or Defendant is otherwise ordered to do so.

108. Pursuant to Business and Professions Code Sections 17203 and 17535, Plaintiff and the Class Members seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its practice of false and deceptive advertising and marketing of iCloud+ and Private Relay. Likewise, Plaintiff and the Class Members seek an order requiring Defendant to disclose such misrepresentations and omissions, and to preclude Defendant's failure to disclose the existence and significance of the WebKit flaws alleged here.

109. As a direct and proximate result of Defendant's misconduct in violation of the UCL, Plaintiff and the Class Members, were harmed in the amount of the purchase price they paid for the Challenged Representations and Omissions. Further, Plaintiff and the Class Members have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for iCloud+, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiff seeks a monetary award for violation of the UCL in damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiff and the Class Members for said monies, as well as injunctive relief to enjoin Defendant's misconduct to prevent ongoing and future harm that will result.

***"Unfair" Prong***

110. Under the UCL, a challenged activity is "unfair" when "any injury it causes outweighs any benefits provided to consumers and the injury is one that the consumers themselves could not reasonably avoid." *Camacho v. Auto Club of Southern California*, 142 Cal. App. 4th 1394, 1403 (2006).

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

111. Defendant's alleged false advertising of iCloud+ and Private Relay with the Challenged Representations and Omissions encouraged consumers to purchase, renew, or continue paying for iCloud+ with the expectation that Private Relay would hide their IP addresses and Safari browsing activity as represented. However, WebKit flaws allegedly allowed websites to see users' real IP addresses even when Private Relay was enabled, causing financial injuries to consumers who paid subscription fees for iCloud+ and received less than the advertised privacy value. Consumers could not reasonably avoid the injuries caused by Defendant's alleged deceptive advertising and marketing of iCloud+ and Private Relay. Accordingly, the injuries caused by Defendant's alleged deceptive advertising and marketing outweigh any benefits.

112. Some courts conduct a balancing test to decide if a challenged activity amounts to unfair conduct under California Business and Professions Code Section 17200. They "weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1169 (9th Cir. 2012).

113. Here, Defendant's alleged conduct of advertising iCloud+ Private Relay as hiding users' IP addresses and browsing activity in Safari while WebKit flaws allowed websites to see users' real IP addresses results in financial harm to consumers. Thus, the utility of Defendant's conduct is outweighed by the gravity of its harm.

114. Some courts require that "unfairness must be tethered to some legislative declared policy or proof of some actual or threatened impact on competition." *Lozano v. AT&T Wireless Servs. Inc.*, 504 F. 3d 718, 735 (9th Cir. 2007).

115. Defendant's advertising and marketing of iCloud+ and Private Relay, as alleged herein, is deceptive, misleading, and unreasonable, and constitutes unfair conduct. Defendant knew or should have known of its unfair conduct. Defendant's misrepresentations and omissions constitute an unfair business practice within the meaning of California Business and Professions Code Section 17200.

116. There existed reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein. Defendant could have refrained from advertising iCloud+ and Private Relay with the Challenged Representations and Omissions absent

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

adequate basis, or could have disclosed the limitations of Private Relay's IP-masking functionality.

117. All of the conduct alleged herein occurs and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct repeated on thousands of occasions daily.

118. Pursuant to Business and Professions Code Section 17203, Plaintiff and the Class Members seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its practices of advertising and marketing iCloud+ and Private Relay with the Challenged Representations and Omissions.

119. Plaintiff and the Class Members have suffered injury in fact, have lost money, and overpaid for iCloud+ as a result of Defendant's alleged unfair conduct. Specifically, Plaintiff and the Class Members paid for iCloud+ while Private Relay was advertised as hiding users' IP addresses and Safari browsing activity, but the feature allegedly did not perform as represented because WebKit flaws allowed websites to see users' real IP addresses. Plaintiff and the Class Members would not have purchased, renewed, or continued paying the same amount for iCloud+ if they had known that Private Relay's advertising and marketing were deceptive. Accordingly, Plaintiff seeks damages, restitution and/or disgorgement of ill-gotten gains pursuant to the UCL.

***<u>"Fraudulent" Prong</u>***

120. The UCL considers conduct fraudulent (and prohibits said conduct) if it is likely to deceive members of the public. *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1267 (1992).

121. Defendant used the Challenged Representations and Omissions with the intent to sell iCloud+ subscriptions to consumers, including Plaintiff and the Class Members. The Challenged Representations and Omissions are deceptive, and Defendant knew, or should have known, of its deception. The Challenged Representations and Omissions are likely to mislead consumers into purchasing, renewing, or continuing to pay for iCloud+ because they are material to the average, ordinary, and reasonable consumer.

122. As alleged herein, the misrepresentations by Defendant constitute a fraudulent business practice in violation of California Business & Professions Code Section 17200.

123. Plaintiff and the Class Members reasonably and detrimentally relied on the material

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

and deceptive Challenged Representations and Omissions to their detriment in purchasing, renewing, or continuing to pay for iCloud+.

124. Defendant had reasonably available alternatives to further its legitimate business interests, other than the conduct described herein. Defendant could have refrained from advertising iCloud+ and Private Relay with the Challenged Representations and Omissions absent adequate basis, or could have disclosed the limitations of Private Relay's IP-masking functionality.

125. All of the conduct alleged herein occurs and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct.

126. Pursuant to Business and Professions Code Section 17203, Plaintiff and the Class Members seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its practice of advertising and marketing iCloud+ and Private Relay with the Challenged Representations and Omissions.

127. Plaintiff and the Class Members have suffered injury in fact and have lost money as a result of Defendant's alleged fraudulent conduct. Plaintiff paid an unwarranted premium for the Subscriptions. Specifically, Plaintiff and the Class Members paid for services that were advertised as at least as good as, if not better, than the services of other competitors in the market. Instead, the software included did not come close to what was advertised, as it was not capable of hiding users' IP addresses and Safari browsing activity in all situations. Accordingly, Plaintiff seeks damages, restitution, and/or disgorgement of ill-gotten gains pursuant to the UCL.

***<u>"Unlawful" Prong</u>***

128. The UCL identifies violations of other laws as "unlawful practices that the unfair competition law makes independently actionable." *Velazquez v. GMAC Mortg. Corp*., 605 F. Supp. 2d 1049, 1068 (C.D. Cal. 2008).

129. Defendant's advertising and marketing of iCloud+ and Private Relay, as alleged herein, violates California Civil Code sections 1750, et seq. (the "CLRA")" and California Business and Professions Code sections 17500, et seq. (the "FAL") as set forth below in the sections regarding those causes of action.

130. Additionally, Defendant's use of the Challenged Representations and Omissions to

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

sell iCloud+ subscriptions violates California Civil Code sections 1572 (actual fraud), 1573 (constructive fraud), 1709-1710 (fraudulent deceit), and 1711 (deceit upon the public), as set forth above.

131. Defendant's conduct in making the deceptive representations described herein constitutes a knowing failure to adopt policies in accordance with and/or adherence to applicable laws, as set forth herein, all of which are binding upon and burdensome to its competitors. This conduct engenders an unfair competitive advantage for Defendant, thereby constituting an unfair, fraudulent and/or unlawful business practice under California Business & Professions Code sections 17200-17208. Additionally, Defendant's misrepresentations of material facts, as set forth herein, violate California Civil Code sections 1572, 1573, 1709, 1710, 1711, and 1770, as well as the common law claims stated in this lawsuit.

132. Defendant's advertising and marketing of iCloud+ and Private Relay, as alleged herein, are deceptive, misleading, and unreasonable, and constitute unlawful conduct. Defendant knew or should have known of its unlawful conduct.

133. Defendant had reasonably available alternatives to further its legitimate business interests, other than the conduct described herein. Defendant could have refrained from advertising iCloud+ and Private Relay with the Challenged Representations and Omissions absent adequate basis, or could have disclosed the limitations of Private Relay's IP-masking functionality.

134. All of the conduct alleged herein occurs and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct.

135. Pursuant to Business and Professions Code Section 17203, Plaintiff and the Class Members seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its practice of deceptive advertising of iCloud+ and Private Relay.

136. Plaintiff and the Class Members have suffered injury in fact and have lost money as a result of Defendant's unlawful conduct. Plaintiff and the Class Members overpaid for iCloud+ because Private Relay was advertised as hiding users' IP addresses and Safari browsing activity but allegedly did not provide the promised IP-masking protection. Plaintiff and the Class Members would not have purchased, renewed, or continued paying the same amount for iCloud+ if they had

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

known that Private Relay did not perform as represented. Accordingly, Plaintiff seeks damages, restitution and/or disgorgement of ill-gotten gains pursuant to the UCL.

**COUNT TWO**

**Violation of California False Advertising Law**

**(Cal. Bus. & Prof. Code §§ 17500, *et seq*.)**

**(*On Behalf Of The Nationwide Class, Or, In The Alternative, The California Subclass*)**

137. Plaintiff restates and realleges the preceding factual allegations set forth above as if fully alleged herein.

138. Plaintiff brings this claim on behalf of himself and on behalf of the Nationwide Class, or alternatively, the California Subclass.

139. This claim is brought under California law or, alternatively, the laws of the respective states where Class Members purchased the Subscriptions.

140. The False Advertising Law, codified at Cal. Bus. & Prof. Code section 17500, *et seq.*, prohibits "unfair, deceptive, untrue or misleading advertising[.]"

141. Defendant violated section 17500 when it advertised and marketed the Subscriptions through the unfair, deceptive, and misleading Challenged Representations disseminated to the public through the Subscriptions' advertising and marketing. These representations were deceptive because the Subscriptions do not conform to them. The representations were material because they are likely to mislead a reasonable consumer into purchasing the Subscriptions.

142. In making and disseminating the representations alleged herein, Defendant knew or should have known that the representations were untrue or misleading, and acted in violation of § 17500.

143. Defendant's Challenged Representations were specifically designed to induce reasonable consumers, like Plaintiff and the Class Members, to purchase the Subscription.

144. As a direct and proximate result of Defendant's misconduct in violation of the FAL, Plaintiff and Class Members were harmed in the amount of the purchase price they paid for the Subscriptions. Further, Plaintiff and members of the Class have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Subscription, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiff seeks a monetary award for violation of the FAL in damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiff and the Class Members for said monies, as well as injunctive relief to enjoin Defendant's misconduct to prevent ongoing and future harm that will result, as well as a corrective advertising campaign to correct prior misrepresentations.

145. Defendant's unfair, fraudulent, and unlawful conduct described herein constitutes malicious, oppressive, and/or fraudulent conduct warranting an award of punitive damages as permitted by law. Defendant's misconduct is malicious as Defendant acted with the intent to cause Plaintiff and consumers to pay for a Subscription that they were not, in fact, receiving. Defendant willfully and knowingly disregarded the rights of Plaintiff and consumers as Defendant was aware of the probable dangerous consequences of its conduct and deliberately failed to avoid misleading consumers, including Plaintiff. Defendant's misconduct is oppressive and subjected Plaintiff and consumers to unjust hardship, and knowingly disregarded their rights. Defendant's misconduct is fraudulent as Defendant, at all relevant times, intentionally misrepresented and/or concealed material facts with the intent to deceive Plaintiff and consumers. The wrongful conduct constituting malice, oppression, and/or fraud was committed, authorized, adopted, approved, and/or ratified by officers, directors, and/or managing agents of Defendant.

**COUNT THREE**

**Violation of California Consumers Legal Remedies Act**

**(Cal. Civ. Code §§ 1750, *et seq*.)**

**(*On Behalf Of The Nationwide Class, Or, In The Alternative, The California Subclass*)**

146. Plaintiff restates and realleges the preceding factual allegations set forth above as if fully alleged herein.

147. Plaintiff brings this claim on behalf of himself and on behalf of the Nationwide Class, or alternatively, the California Subclass.

148. This claim is brought under California law or, alternatively, the laws of the respective states where Class Members purchased the Subscriptions.

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

149. The CLRA provides that "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful."

150. The Subscriptions are "Services," as defined by the CLRA in California Civil Code §1761(b) because they are services that Plaintiff and the Class purchased primarily for personal, family, or household purposes.

151. Defendant is a "person," as defined by the CLRA in California Civil Code §1761(c) because it is a corporation.

152. Plaintiff and the Class Members are "consumers," as defined by the CLRA in California Civil Code §1761(d) because they are individuals who purchased the Subscriptions for personal, family, or household purposes.

153. The purchase of the Subscriptions by Plaintiff and the Class Members are "transactions" as defined by the CLRA under California Civil Code section 1761(e) because Plaintiff entered into an agreement with Defendant or its authorized vendors to purchase the Subscriptions.

154. Defendant violated the following sections of the CLRA by selling the Subscriptions to Plaintiff and the Class Members through the misleading, deceptive, and fraudulent Challenged Representations:

a. Section 1770(a)(5) by representing that the Subscriptions have "characteristics, . . . uses [or] benefits . . . which they do not have."

b. Section 1770(a)(7) by representing that the Subscriptions "are of a particular standard, quality, or grade . . . when they are of another."

c. Section 1770(a)(9) by advertising the Subscriptions "with [the] intent not to sell [] as advertised."

155. Defendant's uniform and material representations regarding the Subscriptions were likely to deceive, and Defendant knew or should have known that its Challenged Representations were misleading.

156. Defendant's conduct is malicious, fraudulent, and wanton in that Defendant

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

intentionally misled and withheld material information from consumers, including Plaintiff, to increase the sale of the Subscriptions.

157. Plaintiff and the Class Members could not have reasonably avoided such injury. Plaintiff and the Class Members were unaware of the existence of the facts that Defendant suppressed and failed to disclose, and Plaintiff and the Class Members would not have purchased the Subscriptions and/or would have purchased them on different terms had they known the truth.

158. Plaintiff and the Class Members suffered harm as a result of Defendant's violations of the CLRA because they relied on the Challenged Representations in deciding to subscribe to iCloud+. The Challenged Representations were a substantial factor. The Challenged Representations were material because a reasonable consumer would consider them important in deciding whether to subscribe to iCloud+.

159. As a direct and proximate result of Defendant's misconduct in violation of the CLRA, Plaintiff and the Class Members were harmed in the amount they paid for their iCloud+ subscriptions. Accordingly, Plaintiff seeks a monetary award for violation of this Act in the form of restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiff and the Class Members for said monies.

160. Pursuant to Section 1780(a) of the Act, Plaintiff seeks injunctive relief in the form of an order enjoining the above-described wrongful acts and practices of Defendant, including, but not limited to, an order enjoining Defendant from continuing to make the misleading claims challenged herein and requiring Defendant to undertake a corrective advertising campaign to correct its prior false and misleading representations. Plaintiff also requests a court order requiring Defendant to provide restitution to Plaintiff and the Class for the money wrongfully acquired. Unless this injunctive relief is granted, Plaintiff will suffer irreparable harm.

161. Plaintiff respectfully requests that the Court enjoin Defendant from continuing to employ the unlawful methods, acts, and practices alleged herein pursuant to § 1780(a)(2). In addition, Defendant should be compelled to provide restitution to consumers who paid for iCloud+ subscriptions that were not what they expected to receive due to Defendant's misrepresentations.

162. Plaintiff and the Class are entitled to equitable relief as no adequate remedy at law

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

exists.

163. Injunctive relief is appropriate on behalf of Plaintiff and the Class because Defendant has failed to make clear that iCloud Private Relay does not reliably conceal users' real IP addresses as originally advertised. Injunctive relief is necessary to correct past harm and prevent future harm—none of which can be achieved through available legal remedies. Further, injunctive relief, in the form of advertising or marketing modifications as well as a corrective advertising campaign, is necessary to dispel public misperception about iCloud Private Relay that has resulted from Defendant's unfair, fraudulent, and unlawful marketing efforts. Such modifications would include providing the IP-masking protection as advertised or making clear to consumers that iCloud Private Relay does not reliably conceal their real IP addresses. Such relief is also not available through a legal remedy, as monetary damages may be awarded to remedy past harm (i.e., subscribers who have been misled), while injunctive relief is necessary to remedy future harm (i.e., prevent future subscribers from being misled), under the current circumstances where the dollar amount of future damages is not reasonably ascertainable at this time. Plaintiff is, currently, unable to accurately quantify the damages caused by Defendant's future harm (e.g., the dollar amount that Plaintiff and Class Members overpay for iCloud+), rendering injunctive relief a necessary remedy.

## <u>COUNT FOUR</u>

### Fraud

**(*on behalf of the Nationwide Class*)**

164. Plaintiff restates and realleges the preceding factual allegations set forth above as if fully alleged herein.

165. Plaintiff brings this claim on behalf of himself and on behalf of the Nationwide Class, or alternatively, the California Subclass.

166. This claim is brought under California law or, alternatively, the laws of the respective states where Class Members purchased the Subscriptions.

167. Defendant affirmatively misrepresented the capabilities of the Subscriptions when selling and marketing them.

168. Defendant also knew that its misrepresentations regarding the Subscriptions were

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

material, and that a reasonable consumer would rely upon Defendant's representations in making purchasing decisions.

169. Plaintiff and Class Members did not know—nor could they have known through reasonable diligence—about the true nature of the Subscriptions.

170. Plaintiff and Class Members would have been reasonable in relying on Defendant's misrepresentations in making their purchasing decisions.

171. Plaintiff and Class Members had a right to rely upon Defendant's representations as Defendant maintained monopolistic control over knowledge of the true quality of the Subscriptions.

172. Plaintiff and Class Members sustained damages as a result of their reliance on Defendant's misrepresentations, thus causing Plaintiff and Class Members to sustain actual losses and damages in a sum to be determined at trial, including punitive damages.

## COUNT FIVE

### Negligent Misrepresentation

### (*on behalf of the Nationwide Class*)

173. Plaintiff restates and realleges the preceding factual allegations set forth above as if fully alleged herein.

174. Plaintiff brings this claim on behalf of himself and on behalf of the Nationwide Class, or alternatively, the California Subclass.

175. This claim is brought under California law or, alternatively, the laws of the respective states where Class Members purchased the Subscriptions.

176. Defendant had a duty to Plaintiff and the Class to exercise reasonable and ordinary care in the developing, testing, manufacture, marketing, detailing, distribution, and sale of the Subscriptions.

177. Defendant breached its duty to Plaintiff and the Class by advertising the Subscriptions as having capabilities they do not actually have.

178. Defendant knew or should have known that the qualities and characteristics of the Subscriptions were not as advertised, marketed, detailed, or otherwise represented or suitable for their intended use and were otherwise not as represented by Defendant.

179. As a direct and proximate result of Defendant's conduct, Plaintiff and the Class have suffered actual damages in that they would not have purchased the Subscriptions had they known that the Subscriptions do not conform to the Subscription's marketing, advertising, or statements.

180. Plaintiff and the Class seek actual damages, attorneys' fees, costs, and any other just and proper relief available.

**COUNT SIX**

**Breach of Contract**

**(*on behalf of the Nationwide Class*)**

181. Plaintiff restates and realleges the preceding factual allegations set forth above as if fully alleged herein.

182. Plaintiff brings this claim on behalf of himself and on behalf of the Nationwide Class, or alternatively, the California Subclass.

183. This claim is brought under California law or, alternatively, the laws of the respective states where Class Members purchased the Subscriptions.

184. Defendant expressly stated that the Subscriptions would perform as advertised. Defendant's claims regarding the Subscriptions constituted an affirmation of fact, promise, and/or description of the services that became part of the basis of the bargain. Plaintiff and the Class Members placed importance on Defendant's claims.

185. All conditions precedent to Defendant's liability under this contract have been performed by Plaintiff and the Class Members.

186. Defendant breached the terms of the contract, with Plaintiff and the Class Members by not providing Subscriptions that conform to the advertising and marketing claims.

187. As a result of Defendant's breach of contract, Plaintiff and the Class Members have been damaged in the amount to be determined at trial.

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

**<u>COUNT SEVEN</u>**

**Quasi-Contract / Unjust Enrichment**

**(*on behalf of the Nationwide Class*)**

188. Plaintiff restates and realleges the preceding factual allegations set forth above as if fully alleged here.

189. Plaintiff brings this claim on behalf of himself and on behalf of the Nationwide Class, or alternatively, the California Subclass.

190. This claim is brought under California law or, alternatively, the laws of the respective states where Class Members purchased the Subscriptions.

191. To the extent required by law, this cause of action is alleged in the alternative to legal claims, as permitted under Fed. R. Civ. P. 8.

192. Plaintiff and Class Members conferred monetary benefits on Defendant by paying recurring subscription fees for iCloud+. Defendant's profits were funded, in part, by payments made by or on behalf of Plaintiff and Class Members. As such, a portion of these payments was attributable to Defendant's Challenged Representations and Omissions regarding iCloud Private Relay.

193. Defendant knew that Plaintiff and the Class conferred a benefit which Defendant accepted, and through which Defendant was unjustly enriched in retaining revenues derived from Plaintiff and Class Members' iCloud+ subscription payments. Retention of those monies under these circumstances is unjust and inequitable because Defendant failed to disclose that, contrary to its representations, iCloud+ Private Relay did not hide users' IP addresses and Safari browsing activity as represented, and those misleading representations and omissions caused injury because Plaintiff and Class Members paid for iCloud+ on terms they otherwise would not have accepted.

194. Defendant enriched itself by retaining subscription revenues attributable to iCloud+ and Private Relay while allegedly failing to provide the IP-masking functionality represented to subscribers.

195. Because Defendant's retention of the non-gratuitous benefits conferred on them by Plaintiff and Class Members is unjust and inequitable, Defendant has been unjustly enriched in an

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

amount to be determined at trial.

## IX. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of all others similarly situated, requests judgment against Defendant as follows:

a. **Certification:** For an order certifying this action as a class action, appointing Plaintiff as the Class Representative, and appointing Plaintiff's Counsel as Class Counsel;

b. **Declaratory Relief:** For an order declaring that Defendant's conduct violates the statutes and laws referenced here consistent with applicable law and pursuant to only those causes of action so permitted;

c. **Injunction:** For an order requiring Defendant to change its business practices to prevent or mitigate the risk of the consumer deception and violations of law outlined here. This includes, for example, orders that immediately enjoin Defendant from continuing to market, advertise, distribute, and sell the Subscriptions in the unlawful manner described here; that require Defendant to engage in an affirmative advertising campaign to dispel the public misperception of the Subscriptions resulting from Defendant's unlawful conduct; and/or that require Defendant to take all further and just corrective action, consistent with applicable law and pursuant to only those causes of action so permitted;

d. **Damages/Restitution/Disgorgement:** For an order awarding monetary compensation in the form of damages, restitution, and/or disgorgement to Plaintiff and the Class requested here, consistent with applicable law and pursuant to only those causes of action so permitted;

e. **Punitive Damages/Penalties:** For an order awarding punitive damages, statutory penalties, and/or monetary fines, consistent with applicable law and pursuant to only those causes of action so permitted;

f. **Attorneys' Fees & Costs:** For an order awarding attorneys' fees and costs, consistent with applicable law and pursuant to only those causes of action so permitted;

g. **Pre/Post-Judgment Interest:** For an order awarding pre-judgment and post-judgment interest, consistent with applicable law and pursuant to only those causes of action so permitted; and

h. **All Just & Proper Relief:** For such other and further relief as the Court deems just and proper.

**<u>JURY TRIAL DEMANDED</u>**

Plaintiff demands a trial by jury on all issues and causes of action so triable.

DATED: August 6, 2026

Respectfully submitted,

**CLARKSON LAW FIRM, P.C.**

*<u>/s/ Ryan J. Clarkson</u>*
Ryan J. Clarkson
Yana Hart
Bryan P. Thompson
Cassandra Rasmussen
Jiaming Zheng

*Attorneys for Plaintiff and the Proposed Classes*